Next case on this morning's docket is the case of the people of the state of Illinois v. Jacqueline Lumpkins. And we have Mr. David DeRee for the appellant and Ms. Sharon Shanahan for the appellee. Mr. DeRee, begin your argument. We're here on a partial granting and partial denial of a motion to vacate a default judgment that was filed less than 30 days after the default judgment under Section 1301E. The law treats motions to vacate default judgments differently if they're filed less than 30 days and if they're filed more than 30 days, which would be Section 1401. It's not necessary to establish a meritorious defense, but it's something that the court may consider in vacating the default judgment. In this particular case, the underlying complaint against Jacqueline Lumpkins and others was for allegedly violating the Omnibus Street Gang Terrorism Act, which to my understanding has been very rarely enforced, at least that's my understanding of the matter. And then there was a claim for maintaining a chronic nuisance, which in violation of an Alton ordinance, which related to the alleged street gang activities. Now, the defendant in this case, Jacqueline Lumpkins, is a 55-year-old grandmother. She was living on the premises with her adult daughter who's employed, and Jacqueline Lumpkins is employed, has had the same job for 26 years, and had no criminal record whatsoever. The trial court, and this is in, this would be at page 826 of the appendix, the trial court found that, I should back up, the standard for setting aside default judgments as defined by the leading Illinois Supreme Court case in 2011, N. Ray Haley Dean, the standard is to do substantial justice. That's kind of a broad standard, I would say. And there's a liberal enforcement if you file less than 30 days for preferring to set aside default judgments and allow the case to be heard on the merits, as long as you're within the 30 days. In any event, in applying the substantial, let me back up again, standard on appeal, is kind of interesting. At least as I read the cases, it has two factors. Doing substantial justice, and whether the trial court abused its discretion in failing to vacate the default judgment, with substantial justice being the overriding factor. So it kind of merges the two principles of whether there was an abuse of discretion, but don't forget about the substantial justice standard. We've cited the cases in the brief for standard of review. Now, getting to my main point, the trial court found in determining whether there was substantial justice, and this is in the order ruling on the motion to vacate the default judgment, and it's at page A26 of the appendix to our opening brief. The trial court found that looking at substantial justice, that the hardship on the plaintiff, if plaintiff is required to proceed with trial on the merits, is not high. It's one of the factors to consider. And the trial court also found that the severity of the penalty to the defendant as a result of the default judgment is high, as a portion of the default judgment requires her to vacate her home for a period of one year. So the trial court vacated two paragraphs of the six-paragraph default judgment, and only four of those paragraphs were directed to Jacqueline Lundquist, of the paragraphs one, two, three, and six. So the trial court vacated paragraph three, awarding punitive damages of $100,000, and paragraph six, prohibiting Jacqueline Lundquist from going on the premises that is her home for a period of one year. The court found that that was a high penalty, and that the hardship on the plaintiff from trying to case on the merits was not great. But the same standard applies to the two parts of the default judgment the trial court did not set aside, did not vacate. And that is paragraph one, awarded compensatory damages of $57,000, and paragraph two, awarded attorney's fees of $10,000. Now, this is kind of a side issue, but there's nothing in the record supporting either of those awards. There was no transcript of the hearing on the default judgment, and the state has argued, well, that's our fault, but we weren't there. My client wasn't there. And there was no affidavit, and at the hearing on the motion to vacate the default judgment, no evidence was offered by the state. In any event, whether there's a record of it or not, that part of the default judgment that was not vacated has the same high penalty to Jacqueline Lundquist as the parts that were vacated, because in the evidence in the motion to vacate the default judgment, she established she's been working at the same job for 26 years. She's a grandmother, her adult daughter who works, and her grandson lived there with her, and she makes $30,000 a year. And she has no money to pay the judgment. So instead of losing her home for a period of one year, which is paragraph six, which the trial court found was a high penalty and vacated, Jacqueline Lundquist will lose her home forever, because if the judgment for $67,000 plus now a year's interest or so, over $70,000, is upheld, she will lose her home because the only ability that she would have to pay the judgment would be to have her home foreclosed. So whether you apply substantial justice or abuse of discretion, there's no logical reason for the trial court to have not vacated paragraphs one and two at the same time that she vacated paragraphs three and six. The penalty is just as high. The ability of the plaintiff to prove the case, the hardship on the plaintiff to actually have to prove the case on the merits, is the same, which is not high. Now, after the trial court vacated paragraphs three and six, but not one and two, a trial was scheduled on paragraphs three and six, which would have required the state, which in this case is kind of the state slash city of Alton. It's kind of a combined effort, as I understand it, although the plaintiff is listed as the state of Illinois. They would have been required to prove the same things to proceed on paragraphs three and six. They'd have to try the whole case. And so what the state did is, after that ruling, the state said, well, we'll withdraw all of our claims that relate to paragraphs three and six. That then converted the judge's decision on vacating paragraphs three and six, but not one and two, into a final judgment and the appeal. But an interesting thing about that is that paragraphs one through six don't neatly fit into the counts of the complaint. It's a two-count complaint. And you can argue that the state has basically withdrawn all of its claims because it really needs all of those claims to establish paragraphs one and two that remain. So do you want to expand on that more fully? Well, I didn't want to make it a major point of my argument. But the point here is, instead of the state saying, we withdraw count two, or we withdraw certain paragraphs of count one and count two, they just said, we withdraw all claims that resulted in the default judgment in paragraphs three and six. Those aren't defined anywhere. I mean, they overlap. The parts of the complaint that supports paragraphs one and two that remained in the case overlap with the parts of the complaint that were withdrawn in order to avoid going to trial on paragraphs three and six, i.e., punitive damages and an injunction barring Jacqueline Lumpkins from going on her own. That's not my main point here, Your Honor. But I'm just pointing out that as a tactic, the state then withdrew its claims that related to the paragraphs that the judge had vacated so that they wouldn't have to try anything and there wouldn't be any evidence on any of these. Right. That's the amount of time. I didn't think I would need the full time. You'll have the opportunity to rebut, Mr. Gervais. Thank you, Your Honor. Ms. Shanahan. May I please report, counsel? My name is Sharon Shanahan, and I represent the people of the state of Illinois. I inherited this case. I have her record and the briefs. One of the things that I want to begin with, because it confused me, I thought it might have confused the court, is what was contained in each count and what judgment was originally entered on each count, what was dismissed after the motion to vacate. So is Mr. DeRee correct that you can't support 1 and 2 once you dismiss 3 and 6? Well, I would rather refer to the counts themselves. 1 and 2 is referencing his motion to vacate, not the actual counts. The counts. Okay. Count 1 was maintaining a public nuisance. That's a criminal count. The only relief requested from that count is injunctive relief that she would leave her home. That's it. Count 2 is a civil count under the Street Gang Terrorism Omnibus Prevention Act. That was a new one to me. I think maybe to all of us. I have heard it described, and I think it's probably kind of an apt description, as an Illinois risk statute. So in that case, the state asked for compensatory damages, attorney fees, court costs, and punitive damages, all of which are laid out as available relief in the Street Gang Terrorism Act. Now, the defendant in this case, this case was filed July 23rd, 2014. The damages after having been summoned and not appearing 1, 2, 3, 4, 5 times, maybe 6 or 7 times, the state filed a motion for a default hearing and it is a default judgment. And it was only after that, some 14 months after this case was initiated, when somebody says, you owe $167,000, that she got concerned. And by the way, she is jointly and separately responsible for this. It's not entirely on her. So the gang members are also responsible. Correct. I mean, the reality is. Well, Your Honor, two of them, at least two of them. Three of them. Actually did respond in this case. On the May 18th, 2015, Malik Lumpkins filed something with the court and was given. Is that a relative? I don't know. I assume. Given time to file an answer. And then Mikkel Lumpkins, Malik Lumpkins, Malik Lumpkins appeared February 25th, 2015. Mikkel Lumpkins responded to legal pleadings on May 15th, 2015. And Marcus Baldwin responded May 29th and again June 26th. Now, some of these were just, you know, letters to the court. Some of them were requests to have an attorney. But nonetheless, these are the gang members and they didn't just sit on their hands and ignore this. Only this. Well, I won't say only. Three gang members did do something.  But nonetheless, she filed this hearing to vacate. And so at the hearing to vacate, basically, count one. This is our criminal public nuisance count that asked her to leave her home. The judge, in its discretion, agrees with her and says, you know, this is a big deal that you have to leave your home for a year. And he permitted her to defend on that count. That was the order entered by the judge at the hearing on the motion to vacate. Later on, after that, the state filed a motion to dismiss the nuisance act. So we've gone. Leaving only the street gang terrorism count. And initially, the judgment on that count was compensatory damages, attorney fees and court costs, and punitive damages. And the court, again, after hearing Mrs. Lumpkins testify, after hearing the fact that this house had no mortgage, that she had a good job, that she had for years and years and years. After hearing her side of things, the judge, again, says, I'm going to let you defend on the punitive damages amount. That was $100,000, he says. Again, he's exercising discretion. He says, OK, I'm going to let you defend on that punitive damages thing. And then later on, the state dismissed the request for punitive damages. So nothing is, as counsel for the defendant said, nothing's still hanging out there. We do not have a count one anymore. And what we have in count two remaining is the compensatory damages and the attorney fees. Now, counsel says that there's this side issue that no evidence was presented at the hearing on the default. This is not a side issue. This is the issue. Repeatedly, defendant says, and this is a direct quote, the state produced no evidence in support of the default judgment. That's in defendant's brief at page eight regarding the entire judgment. It's in defendant's brief at issue three, compensatory judgment, and on page 10 regarding the attorney fees and court file. Repeatedly saying, the state produced no evidence in support of the default judgment. This is simply not true. The trial court's order says, and I am quoting, after due consideration of the evidence presented by the state on the issue of damages, this court hereby orders the following, the $57,000 in compensatory damages, the $10,000 in attorney fees, the $100,000 in punitive damages, the other things that apply more directly to the gang itself rather than her. That's a trial court's order saying that it is considering the evidence presented by the state. Now, why isn't it in the record? Well, the state didn't choose to ask for a court reporter. The defendant continued her pattern of ignoring this case. If she had been there, she could have asked for a court reporter. But she just continued to thumb her nose at this entire proceeding. She could have been there. She had noticed. She had repeated notice. She wasn't there. She'd been there. She could have requested a court reporter. Now, even putting that aside, putting her in the situation that she's in right now where we're in a motion to vacate and then a subsequent appeal, she is the appellant. It is her duty to present to this court a record on appeal. She says, I couldn't. I wasn't there. No, she wasn't there of her own choice. But even so, she could have prepared a bystander's report. The rule on bystander's report says, rule 323, if no verbatim transcript of the evidence of proceedings is obtainable, the appellant may prepare a proposed report of proceedings from the best available sources, including recollection. She could have gone to the assistant state's attorney. It's not in the record. But I have received information from the assistant state's attorney about what was presented. If I could get it, the defendant could have gotten it. Even if the defendant felt that what they got from the assistant state's attorney was not sufficient to establish the evidence presented, the next thing is if it goes to the trial court. Certainly, the trial court was there. And with the work of the trial court and the assistant state's attorney, the defendant could have presented a bystander's report. Thank you, Ms. Shanahan. Mr. DeRee, do you have rebuttal? I address this record on appeal. It's here in the reply brief, page 4, article 4 and 5. I refer to all three cases that were cited by the state. They're all distinguishable. There is no case that says in vacating a default judgment, at which the defendant obviously did not appear at the hearing, that if there is no record of whatever evidence was presented at the default judgment, that, therefore, the person vacating the default judgment loses, or it was their obligation. You can't prepare a bystander report if you're not there and hear what happened. It's not unusual in these kind of cases in a default judgment for the plaintiff to present the order to the court and the court to sign it. And it was prepared by the state. And the judge may not even have thought, you know, based on the evidence presented. On the other hand, we don't know what evidence was presented. Excuse me, Your Honor. It was just the statement that there was evidence. Right. And there's no affidavit. And the state didn't come in at the motion to vacate and say, by the way, here's an affidavit or here's what was presented. And one of the things was $10,000 in attorney's fees. How do you get the $10,000 in attorney's fees for filing a complaint and taking a default judgment? There were no other proceedings. It looks like to me those figures were just added in. But here's the key point. It is not necessary for the appellant to establish what did or did not happen at the hearing on the default judgment. The record on appeal that is significant is what happened at the hearing on the motion to vacate. And that was transcribed and that is in the court record. The three cases that were cited are all distinguishable. There's no case that says the party vacating a default judgment within 30 days after it's entered loses because he didn't prepare a transcript of the hearing on the default judgment itself. The key issue here is on that standard of review of doing substantial justice and whether there was an abuse of discretion is that the same findings by the trial court apply to the two paragraphs of the default judgment that were vacated that applies to the two paragraphs that were not vacated. Because in both cases the hardship on the plaintiff to actually try the case on the merits is small. And the severity of the penalties, the ones that were vacated and the ones that were not vacated, are high. So substantial justice says let's have this case heard on the merits, something the state obviously didn't want to do. Or they would have proceeded to try paragraphs three and six when they were set for trial instead of withdrawing them so that they would have a final default judgment. All Jacqueline Lumpkins asked is to have a chance to try these cases on the merits. She's not a criminal. She's 55 years old and has never been convicted of any kind of crime whatsoever. She's had the same job for 26 years, helping support her daughter who's employed in her grandchild. How many times was it she didn't appear in court? How many times I've missed that and you went over it in your initial argument. Did she not appear when she was supposed to appear in court? As far as I know, just once on the default when she was held on the default. Just one time, you say? I believe so, Your Honor. She simply never answered the complaint. The default judgment was issued on liability. That's not a final judgment. And then there was this hearing on the damages for the default judgment. I'm not sure if she was noticed on that or not. I don't recall what the record says about that. But at most it would be two times then, failing to appear initially when there was a judgment on liability and then failing to appear at the hearing on damages if she was notified of that. But she filed a motion to vacate the default judgment within 14 days after it was entered. And the standard is substantial justice. And substantial justice suggests that this 55-year-old grandmother should have a chance to be heard on the merits. She has no criminal record. She also testified she was unaware of any criminal activity, and she was working at night during the entire period of each of the alleged incidents described in the complaint. I pointed this out in the reply brief. She didn't switch to days because her mother was in a terminal illness. She didn't switch to days to care for her mother until after all of the alleged incidents occurred. And all these alleged incidents didn't occur on her property. That's outside the record, though, isn't it? I'm not sure, Your Honor, whether she testified to that. But the trial court found it's undisputed. It is disputed that those incidents occurred, or at least she had knowledge of them and condoned them. But on that point, there's alleged to be like 35 or 44, I guess, criminal acts and a murder. Is that something we're going to find in the record? Just because it's alleged in the complaint. I think that's the only place in the record that it exists. And I think if we got into the evidence, it would be that that did not occur on her property. But that's not in the record. Thank you, Mr. DeRee. Thank you, Ms. Shanahan. Take the matter under advisement under ruling and due course. We have another brief recess. All rise.